Okay, when you're ready. Thank you. Good afternoon, and may it please the court. Eliodoro Moreno Jr. for the petitioner, Balwinder Singh. Substantial evidence does not support the agency's adverse credibility finding, and thus this court must reverse and remand. In this case, the transcript that was later made reveals that the IJ forgot... Remand for what? Do you think we should... Oh, remand for new determinations of credibility and... No, Your Honor, because none of the reasons cited by the BIA are supported by substantial evidence. And the IJ here made an alternative finding stating that if the respondent was credible, then he established past persecution and that the government failed to rebut that. And the judge did that on page 70 to 71 in the administrative record. Now, in this case, the transcript that was later made reveals that the IJ forgot what occurred during Mr. Singh's testimony, which was at least five months prior to her decision, and caused her decision to be riddled with errors that are abundantly clear and require reversal under the substantial evidence standard. Identity is a clear example of this. The IJ's identity finding was based entirely on her failure to remember that Mr. Singh provided an original of his Indian identity, and it's objection to the admission of that license. Since the IJ's decision on identity is entirely premised on her faulty memory and the transcript proves that Mr. Singh established his identity, that finding cannot support the adverse credibility finding. Now, a review of the transcript here also compels reversal of the IJ's demeanor finding. An IJ's demeanor finding in a decision is not evidence. And for this Court to determine if a decision is supported by substantial evidence, that demeanor finding must be supported by the transcript. At the legal stage, the case law, you know, kind of recognizes that demeanor findings, you know, they turn on what the judge observes at the time. They can be – demeanor findings can be oral – oral statements, and they can also be just observations of how the witness testifies. Yes, Your Honor. And the Petitioner's point is that those oral observations by the immigration judge in her decision must then be supported by the transcript. And in this decision – Well, I mean, she – one of the things she said was that he hesitated. Yes, but that's not supported anywhere in the transcript. This Court – How would that – how would that be reflected in the transcript, though, unless somebody – unless – unless somebody said along the way, oh, he's hesitating for five seconds to answer the question? Absolutely, Your Honor. And an immigration judge in removal proceedings mentioned nonverbal actions – nonverbal actions for the record all the time. And this makes sense, not only to allow review by this Court, but also to allow either attorney to dispute if they believe that the immigration judge identified something incorrectly. For example, in removal proceedings, an immigration judge constantly can say, may the record reflect that the Respondent is gesturing to his left shoulder to indicate an injury? Or may the record reflect that the Respondent is holding up his hands one foot apart to describe the length of an object? Or in the demeanor context, immigration judges regularly state, may the record reflect that the Respondent keeps looking at his attorney each time a question is asked? Or may the record reflect that the Respondent is sweating profusely, is fidgety, or looking up at the ceiling for a long period of time before answering each question? And this Court – Has paused for five seconds before answering the question? And it would, Your Honor. And this Court in Gin v. Holder and Wang v. Holder illustrated how that demeanor – how an immigration judge's demeanor finding must be supported. So in your view, we can't really rely on a demeanor finding by the I.J. unless we have contemporaneous evidence in the transcript where the I.J. says, let the record reflect. What we have here is the I.J.'s decision. She very clearly states he hesitates at times, he speeds up at times when he gets involved in this. I mean, we have very clear finding of demeanor stuff. It's just not in the transcript. You would require the I.J. as part of running the actual testimony to interrupt each time she sees that there's something that may be a demeanor problem? Yes, Your Honor. That is not the law, and I don't think it should be the law. Well, Your Honor, and this Court has held as much implicitly in Wang and Lin. For example, in Wang, the immigration judge specifically identified areas of his – of their applicant's testimony in that case that she found that the person just did not give any audible response and was hesitant and just nonresponsive in an inaudible way, and the Court held in that case, and the transcript supports that because the I.J. does comment during the actual testimony and that we might, in reviewing that, point to the fact that it occurred during that time in no way means that that's the only way the I.J. may appropriately take into account demeanor evidence. Your Honor, the Petitioner is unable to find a single case by this Court where the applicant identified in their decision where the person testified. Well, you may be about to get one. Well, Your Honor, and we – There is another way in which our Court looks at demeanor findings, and that is that the I.J.'s demeanor finding is not specific enough. So, like, they just make a general statement, well, the witness was just not – was nervous the whole time or whatever, and that's just too general. That is – It has to be specific. You know, there's one instance here where I think, if I recall correctly, the I.J. noted that he was nervous when he spoke about what he did for the man party in India, but he spoke about the man party several times, and so you can't tell from the record what she's referring to. That is correct, Your Honor. But that's an instance maybe where a demeanor finding like witness was nervous is not specific enough. But there are other instances here where she's quite specific, where, for example, I think it's the one where the passport incident, where she says he was extremely nervous when there was testimony about the passport, the certificates on the passport. Your Honor, if this Court were to hold that simply by a judge stating with specificity that during his testimony regarding his passport he seemed nervous without it being supported in the transcript or anywhere else in the record, in essence, insulates the immigration judge's decision from review by this Court. And do you have any other arguments? This one's a loser for me. Let me ask you, on that same note, what if we find the demeanor evidence finding was unassailable or was not reversible, but five or six other credibility findings were wrong? Yes. What would the result be? Well, Your Honor, then the other one. In other words, would the demeanor finding alone be sufficient to find lack of credibility, or would the other examples play into the result? It would not, Your Honor.  It would have to remand for a reassessment under the totality of the circumstances whether the adverse credibility finding can be sustained. Here, the immigration judge ---- Do you have any case law where we've done that? Excuse me, Your Honor? Post-Real ID Act. Is there any case law where we've done that? Yes, Your Honor. And I don't have the site directly in front of me, but I can definitely submit to the Court of 20AJ identifying the case law that has done that. And, however, the other ---- Let me interrupt if you can. Yes. You mentioned a mistake with respect to the driver's license. I've read the IJ's opinion, but I'm rereading it. I can't find it. Can you point to me where in the IJ's decision she makes the mistake with respect to the driver's license? Yes, Your Honor. She makes that mistake on page 69. Excuse me, Your Honor. Yes, Your Honor. So on page 68 and 69, on page 69, the immigration judge specifically says the Respondent submitted only a copy of his driver's license. He indicated that the original ---- Okay. Where are you on the page? Door towards the bottom, Your Honor. It's in the final third. Okay. And the Respondent submitted only a copy of his driver's license. However, the record makes clear on page 160 that his attorney indicated to the judge that the original was provided, and then the judge asked the government counsel if they continued to object, and the government counsel said no. So the immigration judge's decision ---- You know ---- Okay. I got it. Okay. Yes. And that's crucially important because the immigration judge, in her adverse credibility findings, specifically stated that the most important concern that the judge had was that Mr. Singh did not corroborate his identity. But the only reason she found that is because she believed mistakenly that he didn't provide an original identity document issued in India, but he did. That wasn't the only reason with respect to the driver's license. She had very strong suspicion about, for example, the passport, which was only a copy, and it had those odd sort of notary stamps on it. Yes, but ---- She was concerned about the marriage certificate, why the marriage certificate was only applied for in 2012 after the proceedings had been begun, even though the marriage had taken place seven or eight years earlier. She had various reasons to be suspicious about the identity. The driver's license was only a copy. Your Honor, the immigration judge's analysis of Mr. Singh's testimony regarding his passport was also incorrect. Mr. Singh was never inconsistent about how that copy was provided to the court. Mr. Singh testified that ---- He was consistent, I agree with that. He might not have been telling the truth, but he was consistent. He was definitely consistent that he made the copy after the passport was issued, and then his family members, he didn't know if his family members provided that copy or if a copy was made of that copy. And he specifically explained that the marriage certificate was registered late because he was no ---- he had no need for the registration of the marriage until he had come to the United States. And that's a reasonable explanation. And the immigration judge didn't consider that explanation at all in her decision. So that is not supported, Your Honor, and I would ask for a remand. Roberts. I just have one, please. What I hope will be a quick question. Yes. It is the IJ who found that if Mr. Singh were credible, that he would have established both past persecution and likelihood of future persecution. The BIA didn't address that point. If we were to reverse, would we have to remand to the BIA to address the question of past persecution, or would that be sort of waived by the fact that it wasn't raised before the BIA by the government? Well, the government never appealed the immigration judge's decision on that respect. So, no, Your Honor, it would just be remanded for background checks if the court completely reverses the adverse credibility finding. However, if the court finds that one aspect of the adverse credibility finding does support, but the rest do not, then they would need the remand for a redetermination of credibility under the totality of the circumstances. Thank you. Okay. And we'll do the same for you as we did previously. We will give you a chance to respond. Let's hear from the government. Could you answer that same question first as to what would happen, the question of the I.J. having found past persecution as a backup finding? Yes. Jonathan Robbins here on behalf of the government. With respect to the question of waiver, no, the government hasn't waived that. There was no finding in the immigration judge's decision of a grant. There was no finding that there was a grant, an alternative grant of asylum or an alternative grant. The only the government would have to. No, they said that if his testimony had been credible, it would have supported past persecution and likelihood of future persecution. Right. But there's no law that says that the government has to appeal an advisory comment like that by an immigration judge. This didn't end up with any form of alternative relief. So, for example, if the immigration judge had, for example, denied asylum but granted withholding of removal, in that circumstance, then yes, the government would have to cross appeal if they wanted to challenge the grant of relief. But there was no grant of relief here to challenge. And the case law, specifically the Supreme Court, has said that parties don't have to challenge unless they've actually lost something, that you don't have to appeal just to change the reason for a decision. Or cross appeal or raise in the briefing? Exactly. No. I think the Supreme Court case is Northwest Airlines against County of Kent, Michigan, I think it is, in the Supreme Court. On an immigration case? It's not an immigration case. But it's a party doesn't have to, unless you lose on a remedy in some way, there's no need for an appeal. But what if it's obvious? That is to say, assuming for the moment that the petitioner is credible, I don't ask you to concede that. Okay. If the story is credible, it seems to me almost inescapable that the IJ is correct, that there's both past persecution and a rebuttal, and a failure of the government to rebut. I mean, it's just obvious. Well, Your Honor, I would say that that's something that the agency would have to find in the first instance. You may be right. If the immigration – if that is what the immigration judge was really saying here, I think that's probably what would happen. But I don't think the Court can say that. It would have to remand for – to the agency for a decision consistent with this Court's finding. The Ventura? Okay. Even under Babala? Well, Babala is slightly different. Babala was from the previous case about – I don't think that was dealing with the Supreme Court law, for example, INS against Ventura and Gonzales against Thomas and other cases of the like. With respect to – if that answered your inquiry, if that answered your inquiry with respect to the remedy that they're asking for and whether it's allowed, with respect to the adverse credibility finding, certainly I don't think the record compels a reversal of the agency's determination that petitioners failed to credibly establish their claim here. Your Honors have already spoken at length about the demeanor finding, and the government would wholeheartedly reject the notion that there has to be some sort of rule made that an immigration judge has to preserve demeanor findings as though they were objections or something along those lines. That would just really run counter to common sense. Although our case law is pretty clear that they have to be fairly specific. Well, there's no question about that. They just can't make sort of general demeanor findings. Exactly. But as Your Honor noted, the immigration judge in this case was specific. And it's not even just the specific discussion of the actual problems with demeanor, but the immigration judge tied them to particular problems. So, for example, there was the issue with the passport, with the very questionable stamps, that very questionable-looking document on its face. And the immigration judge tied that to the demeanor, saying when he was asked about that particular issue, he had a panicked look on his face, and he was extremely nervous. So under the totality of the circumstances here, we're not really even looking at the demeanor so much in isolation. It's tied to the different problems that he had in his claim with respect to the various forms of various claims that he was making, particularly with the problematic claims. And it's not even just that there are demeanor findings. The immigration judge also compared the fact that he had demeanor problems with respect to the various – when he was testifying about certain inconsistencies. But at other times when he was testifying and he was more comfortable and there weren't inconsistencies, there was a lack of hesitation. There was a sort of ordinary type of testimony. So this – How does the ultra-virus acts of a notary reflect on his credibility? I mean, maybe this is a minor point, but I couldn't understand the reliance on that. So a notary said that he had some power he didn't have. Is that – He claims that a notary did that, Your Honor. And this goes to – But it said it on there. Well, Your Honor – I mean, that was my understanding. That's what it said on the document, to be sure. But that really brings into question the credibility of the document as to whether it's actually a valid document and questions the veracity of the document if it has something like that on it. And that does go to credibility. I mean, I don't envy immigration judges in asylum cases. It's very hard to determine what's true and what's not. Some cases are totally fraudulent. Some cases are totally true. There are cases in the middle that just have simply embellished claims. It's very difficult to sort through what's real and what's not. I mean, it's an almost impossible job. But when you have a document that's questionable on its face and you ask the person about it and they say, well, it was a notary that must have put those stamps on, but you can see very clearly that notaries wouldn't do that, it brings into question the documents. And it also, when you combine that with the fact that his demeanor became extremely nervous, like it seemed like he didn't realize he was going to be confronted about this document and that he had a panicked look on his face according to the immigration judge. You know, the question here is, does the record compel a conclusion? Is there no possible way an immigration judge could have come to the determination that this immigration judge did, that this wasn't credible? Well, no possible way is not the standard. I'm sorry, what? No possible way is not the standard. Well, the record has to compel a conclusion. What that means is if the evidence could possibly cut both ways, the Court should defer to what the immigration judge found. And here the immigration judge, again, very specific demeanor findings that are completely in compliance with the law. There's also the problems, for example, with the date of Petitioner's marriage. He mixed up the date of marriages. At one point his application said 2005, but he testified that it was 2004. You combine that with the fact that the marriage certificate was questionable on its face because it was issued in 2012, many years after this. The fact he didn't remember his own wife's birthday during the proceedings. I mean, these are things that, you know, how could it be said that the record compels a conclusion that he was credible with those kind of problems in the record? So unless there are any other specific questions about the specific details of the problems in this case, I think the record amply supports the credibility findings. Let me ask you this. One of the things that raised a little bit of concern, as I read it, was it didn't appear as though they actually asked him on a regular basis to explain his inconsistencies. With respect to which inconsistencies, Your Honor? Well, let's look. The landowner versus government? Yeah, that was one. Well, I don't think Petitioner actually raised in his brief to the Board that he didn't have an opportunity to raise that. They did file actually a motion to reopen in a subsequent petition for review that they've actually conceded now is gone. They did try to challenge the translation of that document in the motion to reopen. But in the primary appeal to the Board, I don't recall them saying that they didn't have an opportunity to respond. And so, I mean, even if you were to overturn that one for a specific credibility finding, I do dispute something that my colleague said here about having to remand. This Court has said that even if this Court finds a single discrepancy that's sufficient to uphold a credibility finding, it doesn't have to remand even if some other discrepancies wouldn't be sufficient. And given the fact, I think that's Shrestha against, I don't remember, I think it's Gonzalez maybe. And so if a single discrepancy is enough, I think when you have the problem with the passport combined with the demeanor finding, combined with the problems about the marriage, those considerations are amply enough to support it. Yeah, the marriage and the birthday, those things, well, they might be important to the wife. Maybe grounds for divorce. I don't know. I can't remember. With respect to the credibility, those, we tend to treat those things as small points not really going to credibility. Well, under the soft way, a year, 2004, 2005. Well, she had the right date. The marriage certificate had a photo of him and his wife on it, right? The marriage that was created after the fact, yes, in 2012. But here's the problem. It may seem trivial at first, okay, but remember that the immigration judge is trying to sort through is this a fake claim that's being brought to me? There's a lot of fraudulent documents in these. And so when you ask, so when somebody claims they're being married and you ask them what's your wife's birthday and they don't know the answer, alarm bells start to go off. Is this a real claim? It may seem like a trivial inconsistency, but it's those details where claims oftentimes fall apart. And under the REAL ID Act, the inconsistency doesn't have to go to the heart of the claim, and it's specifically because of these types of problems in claims that tend to arise. Yes? Usually we call on you, not the other way around. I'm sorry. Two of the argument about the affidavits from the father and the village elder describing an incident that neither of them saw being made in the same type of language strikes me as the sort of thing that lawyers do all the time. If someone doesn't know something, the lawyer has to write what they were told about it to demonstrate that there was contemporaneous reporting. And naturally, they're both going to say the same thing because the same person reported the same thing to both of them. So the notion that those two witness reports are lacking credibility because they both said the same thing strikes me as problematic. And the BIA itself disclaimed two of the credibility findings that the IJ had made. Well, the board in this case didn't actually rely on that particular inconsistency to uphold the adverse credibility findings. That was one of the ones they disclaimed? They didn't specifically disclaim it, but they didn't specifically uphold it on that one either. So they didn't speak to it. I would also note that they were actually talking about three letters. There are two letters that were considered, but there's actually a wife that also mirrors the exact same language. But I think – I see I'm out of time if I just finish up answering your question. The Petitioner testified as to the creation of these documents, and he claimed that they had told an interpreter, and an interpreter was writing down what they were saying. So the fact that the language was exactly the same as the – in the way the Petitioner described them being created, that's what sort of lent the fact – that's what sort of gave credence to the notion that this was somewhat suspicious because of the way he claimed that they were created. That the individuals for each letter had been speaking to a Punjabi interpreter, and the interpreter was interpreting what they were saying. That is, I think, what caused the problem. But at the end of the day, it doesn't really make a difference because it wasn't the basis of the Board's finding. They didn't specifically uphold that particular credibility aspect of the case. So thank you. Thank you very much for your time, Your Honors. Could you put two minutes on the clock, please? Thank you, Your Honor. The BIA upheld the inconsistency finding based on five reasons. First was an alleged inconsistency with the passport, which doesn't exist. The – Mr. Singh testified consistently about that, and the Court is correct that after-the-fact stamps that were placed on there while Mr. Singh was here in the United States does not impinge on his credibility. Two of the other alleged inconsistencies – that a notary would never say such a thing, so he must have written that on there. That seems to be the argument. Well, he testified consistently that stamps were not on there when he made the copy that was left there in his home. And then he said that he – when he was confronted with the document, that he didn't know where the stamps came from and then just speculated that maybe it was his brother that got it on there. Two of the other five, he quickly corrected the date when he joined the Amman party and the kind of date that he campaigned for in 2009. So then that just leaves the mistake about the date of marriage, but he testified consistently that he was married. He's also making a mistake as to who he was campaigning for. He quickly corrected that mistake. First he said Deon Singh, and then he immediately corrected himself and said that it was Kulwant Singh without any prompting. And then when the judge specifically asked him who Deon Singh was, he said that he was a vice president of the party, which actually would lend credibility to his claim that he knew who that person was. And then additionally, again, regarding the date of marriage, he testified consistently with his marriage certificate that it was in 2004. And then the DHS asked the confusing question, saying, but it's inconsistent in your statement, but his date of marriage is not in the statement. It's actually in his I-589. And he reasonably explained that he just did – that it was a mistake and that he just did not see it. What do we do with the statement when why are you part of the party? Well, I'm joining the party because the party supports us as against the landowners, suggesting that he's not a landowner. And then it's pointed out to him, but you're a landowner. He says, oh, yeah, I guess I am. Your Honor, she – That sounds like somebody who's kind of forgetting his lines. Your Honor, I would respectfully disagree. I think that the record there suggests that there was an interpretation error. And the respondent's attorney at trial, who's also a native Punjabi speaker, immediately objected and said that they disagreed with the way that that line was specifically interpreted. And all the evidence that he submitted and when he described what he did in detail, that was – that the government did in detail and why it was unjust, that that's what caused him to join because he was a landowner himself. Then he described in detail why he waited 15 years was because by that time he had workers working for him and then he had more time to dedicate to party activities. Okay, good. Thank you very much. Thank you, Your Honor. Thank both sides for your arguments. Yes. Singh v. Session is submitted for decision.
judges: W. Fletcher, Paez, Wilken